IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:11CV599-MOC-DSC

| | |
|---|---|
| ELLEN A. CLEMENS,    )<br>   Plaintiff,    )<br>         )<br>vs.    )<br>          )<br>MICHAEL J. ASTRUE,    )<br>Commissioner of Social    )<br>Security Administration,    )<br>   Defendant.    )<br>          ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #7) and "Memorandum in Support ..." (document #7-1), both filed March 15, 2012; and Defendant's "Motion for Summary Judgment" (document #8) and "Memorandum in Support ... (document #9), both filed April 11, 2012. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

On February 11, 2008, Plaintiff filed an application for a period of disability and Social

---

[1] Pursuant to the Pretrial Scheduling Order entered on January 25, 2012, this matter is ripe upon the filing of Defendant's Motion and Memorandum. See Document #6. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

Security benefits alleging she was unable to work as of March 1, 1996 due to a lower back injury, fibromyalgia, asthma, and arthritis. (Tr. 185). Plaintiff's application was denied initially and on reconsideration. Plaintiff subsequently requested a hearing which was held on January 11, 2010. (Tr. 30-74).

On June 24, 2010, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 11-29). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 1, 1996 through her date last insured of June 30, 2001.[2] (Tr. 16). The ALJ also found that Plaintiff suffered from multilevel degenerative disc disease of the lumbar spine, diffuse osteoarthritis, fibromyalgia, and obesity, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16). The ALJ then considered whether Plaintiff could return to her past relevant work. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform the full range of sedentary work. (Tr. 17-22). Based on this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a Licensed Practical Nurse ("LPN"). (Tr. 22). The ALJ then relied upon Medical-Vocational Rule 201.28 to conclude that Plaintiff could have performed work existing in the national economy and was not disabled within the meaning of the Social Security Act. (Tr. 22-23).

By notice dated September 19, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

The Plaintiff filed the present action on November 23, 2011. On appeal, Plaintiff assigns error to the ALJ's determination of her RFC, analysis of her credibility, and failure to take

---

[2] A claimant must prove disability prior to her date last insured. Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005).

testimony from a Vocational Expert ("V.E.").  See Plaintiff's "Memorandum in Support ..." 8-19 (document #7-1).  The parties' cross motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).  The District Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the

3

Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes at any time prior her date last insured of June 30, 2001.[3] It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

Plaintiff first argues that the ALJ erred in failing to consider her non-exertional limitations in determining her RFC. To the contrary, substantial evidence supports the ALJ's finding that Plaintiff could perform the full range of sedentary work.

In January 1996, Plaintiff was evaluated by Dr. John Ring, an orthopedic surgeon (Tr. 656-660). Dr. Ring opined that Plaintiff had only a "mild partial disability" and remained capable of work involving limited bending and lifting of no more than twenty pounds. (Tr. 657). In May

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

1997, Dr. Ronald Santasiero opined that while Plaintiff was unable to return to her past work as a LPN, she could perform sedentary work involving limited bending and lifting of no more than twenty pounds. (Tr. 672). Dr. Santasiero also recommended that Plaintiff consider vocational rehabilitation training, suggesting his belief that she was not precluded from all work. (Tr. 669). Dr. Ring's and Dr. Santasiero's opinions are further supported by that of Dr. Jeffery Baldwin, a physician who reviewed Plaintiff's medical file in conjunction with her application for New York State worker's compensation benefits. (Tr. 662). Dr. Baldwin opined that Plaintiff had a permanent partial impairment of only moderate severity. (Tr. 662). In addition, both of the state agency physicians who reviewed the evidentiary record as a whole concluded that Plaintiff remained capable of medium work. (Tr. 566-573, 586-593). Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c). If an individual can perform medium work, she is also deemed capable of sedentary and light work. Id. In sum, the opinions of Drs. Ring, Santasiero, Baldwin, and the state agency physicians support the ALJ's finding that Plaintiff could perform <u>at least</u> the full range of sedentary work.

Plaintiff argues that the ALJ failed to consider her non-exertional limitations – pain and limitations in her upper extremities. The treatment notes of Drs. Santasiero and Evans merely reflect Plaintiff's subjective complaints of pain. "[T]here is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain.'" Craig v. Chater, 76 F.3d 585, 595 n. 2 (4th Cir. 1996). As discussed more fully below, the ALJ did not find Plaintiff's subjective complaints of pain to be fully credible. Accordingly, he was not required to assess limitations as a result of those complaints in Plaintiff's RFC. Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007) (finding an ALJ is only required to include those limitations which he finds credible in his RFC

5

determination).

Plaintiff argues that the ALJ should have assessed upper extremity limitations due to her fibromyalgia, polyarthralgias (joint pain) , and osteoarthritis. The ALJ acknowledged Plaintiff's complaints of pain to Dr. Evans but also noted that Plaintiff reported that Celebrex was effective in controlling her symptoms. (Tr. 20-22, 833). A symptom that can be reasonably controlled with treatment is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Dr. Evans' treatment notes also indicate that Plaintiff's lumbar range of motion was only "somewhat" decreased and painful. (Tr. 687).

The fact that Plaintiff experienced some pain does not contradict a finding that she could perform sedentary work. The Fourth Circuit has recognized that "[p]ain is not disabling per se," Gross, 785 F.2d at 1166, and that "disability requires more than mere inability to work without pain." Ferrante v. Bowen, 869 F.2d 593, 1989 WL 14408, at **4 (4th Cir. Feb. 7, 1989) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983)). Dr. Evans also noted that despite Plaintiff's complaints of pain and manipulative problems, her physical functioning was adequate. Plaintiff's self-reported activities of daily living resulted in a score of 1.875 on a scale of 1 to 4, with 4 being the worst (Tr. 20, 685). The fact that Plaintiff reported such extensive daily activities supports the ALJ's finding that her pain was not as severe as she reported. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (holding that a claimant's daily activities, such as performing home exercises, taking care of the family pets, cooking, and doing laundry, were inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical and mental work abilities); and Gross, 785 F.2d at 1166 (plaintiff's activities of daily living suggested that Plaintiff was not disabled from work and discounted allegations of pain).

The objective evidence does not support Plaintiff's contention that she was disabled as a

result of pain and upper extremity limitations. By November 2001, Plaintiff's elbow and finger synovitis (inflammation) were "stable" and her activities of daily living score remained high. (Tr. 20, 684). Dr. Evans never opined that Plaintiff had any specific functional limitations her upper extremities. Further, there is no indication that she requested or was offered any medication stronger than Celebrex for pain. (Tr. 21). As noted by the ALJ, the Fourth Circuit has held that a claimant's limited use of pain medications, failure to sustain any consistent medical regimen for treatment, lack of hospitalizations or emergency room visits, or other significant treatment for pain constitute specific evidence that supports a determination that pain and other symptoms are not disabling. Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992).

The ALJ thoroughly considered Plaintiff's alleged non-exertional limitations and found them to be inconsistent with the record as a whole, including the opinions of the state agency physicians and Drs. Ring, Santasiero, and Baldwin. The ALJ was not required to assess functional limitations based upon Plaintiff's subjective complaints when he did not find them to be supported by the record.

Plaintiff next argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide

7

that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's multilevel degenerative disc disease of the lumbar spine, diffuse osteoarthritis, fibromyalgia, and obesity – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record.

The ALJ provided several justifications for discounting Plaintiff's subjective complaints. The ALJ first considered Plaintiff's assertion that she was unable to sit or stand for more than a few minutes at a time and had difficulty using her hands due to osteoarthritis. (Tr. 18). The ALJ also considered Plaintiff's report that she was unable to sleep due to pain and could not to do much in the way of housework. (Tr. 18).

The ALJ found that Plaintiff's allegations of disabling pain were inconsistent with the evidence of record. Craig, 76 F.3d at 595 (noting the consistency of a plaintiff's subjective complaints with the medical evidence is "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work"). As discussed above, Drs. Krenzer, Ring, and Santasiero found that while Plaintiff may have been unable to return to her past relevant work as an LPN, she remained capable of sedentary work. The state agency physicians found that Plaintiff could perform medium work. This evidence is inconsistent with Plaintiff's

8

allegations of disabling pain and supports the ALJ's credibility determination.

Plaintiff's subjective complaints do not comport with her sporadic use of prescription medication. (Tr. 19). In January 1996, Plaintiff reported to Dr. Ring that she was only using pain medication sparingly. (Tr. 656). In March 1996, Plaintiff reported that she was not taking any medication at all (Tr. 672). In October 1996, she reported again that she was taking no medication. (Tr. 671). Plaintiff's failure to take medication consistently discredits her claim of disabling pain. Hunter, 993 F.2d 31, 36 (claimant's failure to fill prescriptions indicated for mild to moderate pain supported ALJ's negative credibility assessment).

There is a significant gap in the medical evidence from May 1997 to September 1999, concerning the relevant time period in this case. (Tr. 20). There is another gap in Plaintiff's medical treatment for the two years immediately following her date last insured. (Tr. 20). The fact that Plaintiff did not consistently seek treatment during the relevant time period also discredits her claim of disabling pain. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (viewing gaps in medical treatment as "evidence" that claimant's pain was not as intense as alleged).

In making his credibility determination, the ALJ also considered Plaintiff's activities of daily living. "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). Specifically, the ALJ noted that Plaintiff consistently received high scores with respect to her activities of daily living assessments by Dr. Evans. (Tr. 20). Plaintiff was also able to ride in a car for substantial periods of time, including a two day trip to New York. (Tr. 21, 56, 432). Plaintiff counters that she needed to lie down in the back seat of the car and made frequent stops because of her pain. (Tr. 15, 70). However, Plaintiff also reported to her physician that she was able to travel to Florida nearly "pain

9

free." (Tr. 638). To the extent that there was conflicting evidence about Plaintiff's ability to ride in a car for substantial periods of time, this was a matter for the ALJ to resolve. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Johnson, 434 F.3d at 653 (citing Craig, 76 F.3d at 589).

The ALJ found that Plaintiff's symptoms had improved with treatment and that her pain level was 4 of 10 during her treatment with Dr. Evans. (Tr. 403). Plaintiff also reported improvement of her symptoms with swimming pool therapy. (Tr. 412, 427). A symptom that can be reasonably controlled by medication or treatment is not disabling. Gross, 785 F.2d at 1166 (citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965)). The fact that Plaintiff experienced some pain did not preclude the ALJ from finding that she could perform sedentary work.

Plaintiff's argument that the ALJ relied upon "boilerplate" language in weighing her subjective complaints is not persuasive. Rather, the ALJ considered Plaintiff's subsequent ability to work, the consistency of her complaints with the medical evidence, her high scores on the activities of daily living assessments, her responsiveness to treatment, her failure to take pain medication consistently, and the gaps in her medical treatment in making his credibility determination. (Tr. 18-21).

Plaintiff also argues that the ALJ should not have relied upon Dr. Evans' repeated findings that she scored highly on her self-reported activities of daily living assessments. (Tr. 20). Plaintiff received a score of 1.5 out of 4 (with a score of 4 being the worst) in May 2001 (Tr. 403); in January 2001 her score was 1 of 4 (Tr. 405); in October 2000 it was 1.25 of 4 (Tr. 406); in August 2000 it was 1.375 (Tr. 407); and in June 2000 it was 1.875 of 4 (Tr. 409). Plaintiff argues that the ALJ should have credited her testimony that she could not perform any activities of daily living. When reviewing an ALJ's decision for substantial evidence, this Court cannot "reweigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Johnson, 434, F.3d at 653 (citing Craig, 76 F.3d at 589).

Finally, Plaintiff argues that because she had non-exertional limitations to her RFC (pain and upper extremity limitations), the ALJ was required to solicit V.E. testimony to support his determination that there are jobs in the national economy that she could perform. Having concluded that the ALJ's RFC determination that Plaintiff could perform a full range of sedentary work is supported by substantial evidence, this assignment of error fails as well. The ALJ's reliance on grid rule 201.28, was appropriate. 20 C.F.R. § 404, Subpart P, Appendix 2, § 200. Accordingly, there is no merit to Plaintiff's argument that the ALJ was required to solicit vocational expert testimony.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #7) be **DENIED;** that Defendant's "Motion

11

for Summary Judgment" (document #8) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: April 23, 2012

_____
David S. Cayer
United States Magistrate Judge